IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BONNIE OLIVARES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:18-CV-892-RP |
| | § | |
| LULING CARE CENTER NURSING | § | |
| OPERATIONS, L.L.C. *d/b/a* LULING CARE | § | |
| CENTER and LULING CARE CENTER | § | |
| SAFETY PROGRAM BENEFIT PLAN, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court is Plaintiff Bonnie Olivares's ("Olivares") "Motion for New Trial, for Reconsideration of Dismissal, or to Amend Judgment," (Dkt. 50), and associated briefing (Resp., Dkt. 51; Reply, Dkt. 52). After considering the parties' arguments, the facts in the record, and the relevant law, the Court grants Olivares's motion in part and denies it in part.

## I. BACKGROUND

This case involved Olivares's claims related to "serious personal injuries" she suffered while employed by Defendant Luling Care Center Nursing Operations L.L.C. *d/b/a* Luling Care Center ("LCC"). (1st Am. Compl., Dkt. 24, at 1). The Court dismissed Olivares's claims with prejudice for want of prosecution on July 18, 2019, summarizing its reasoning for doing so as follows:

> This action has been pending for over a year. Throughout this time, Olivares has sought an extension of time—seven in total—to respond to *every* opposed motion filed in this case. She has sought these extensions even after the Court has warned her—twice—that no further extensions would be granted. The Court therefore finds that there is a clear record of delay that justifies dismissing this action for want of prosecution.

(Dkt. 47 at 3). The Court also explained, in detail, Olivares's history of requesting extensions of time. (*Id.* at 1–3). The Court entered final judgment the same day. (Dkt. 48).

1

Now, Olivares asks the Court to reconsider its order, vacate the dismissal, and decide LCC's motion for summary judgment, (Dkt. 37), that the Court previously declined to reach, (*see* Order, Dkt. 47, at 3). (Mot., Dkt. 50, at 8). However, the precise relief Olivares requests is not clear. (*See* Mot., Dkt. 50, at 8; Prop. Order, Dkt. 50-3, at 1). This case did not proceed to trial prior to final judgment, so a motion for a new trial is inapposite. Accordingly, the Court will construe her motion as requesting the Court to alter or amend the judgment as permitted by Federal Rule of Civil Procedure 59(e).

## II. LEGAL STANDARD

"[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration." *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). A motion made under Rule 59(e)—that is, one requesting a new trial or for the court to alter or amend its judgment—"is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Instead, it serves "the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). Courts must consider the tension between "the need to bring litigation to an end" and "the need to render just decisions on the basis of all the facts." *Id.* The Fifth Circuit has cautioned that "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Id.*

When a party has had a fair opportunity to present its case, but has failed to do so, a district court does not abuse its discretion by denying that party's claims with prejudice. *See Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003); *cf. Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) ("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally

2

dismiss the suit."). This authority stems from both the fact that "the district court is best situated to determine when plaintiffs have had sufficient opportunity to state their best case," *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 215 n.34 (5th Cir. 2009), and the district court's inherent power 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants,'" *United States v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).

Drawing on this authority, Federal Rule of Civil Procedure 41(b) "authorizes the district court to dismiss a claim for failure of prosecution." *Boudwin v. Graystone Ins. Co.*, 756 F.2d 399, 401 (5th Cir. 1985); *see also id.* ("Although the rule speaks of dismissal pursuant to a motion by the defendant, a district court may dismiss *sua sponte,* with or without notice to the parties."). Generally, these dismissals are "reserved for the most egregious of cases, usually cases where the requisite factors of clear delay and ineffective lesser sanctions are bolstered by the presence of at least one of the aggravating factors." *Rogers v. Kroger,* 669 F.2d 317, 320 (5th Cir. 1982). Aggravating factors include "(1) delay resulting from intentional conduct, (2) delay caused by the plaintiff personally, and (3) delay causing prejudice to the defendant." *Boudwin*, 756 F.2d at 401 (citing *Morris v. Ocean Systems, Inc.,* 730 F.2d 248 (5th Cir. 1984)). In determining whether to exercise its discretion to dismiss with prejudice, the Court "must consider lesser sanctions" in a manner rendering them amenable to appellate review. *Id.* (citing *Hornbuckle v. Arco Oil & Gas Co.,* 732 F.2d 1233, 1237 (5th Cir. 1984)). Lesser sanctions include "[a]ssessments of fines, costs, or damages against the plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings." *Rogers*, 669 F.2d at 321. Ultimately, "[a] clear record of delay coupled with tried or futile lesser sanctions will justify a Rule 41(b) dismissal with prejudice." *Id.* at 322.

### III. ANALYSIS

First, the Court reexamines the record to determine whether a "clear record of delay existed" and at least one aggravating factor justifying dismissal with prejudice was evident. *See Rogers v. Kroger,* 669 F.2d 317, 320, 322 (5th Cir. 1982); *Boudwin v. Graystone Ins. Co.*, 756 F.2d 399, 401 (5th Cir. 1985). Second, the Court discusses the availability and use of lesser sanctions prior to dismissal with prejudice. *See Boudwin*, 756 F.2d at 401; *Rogers*, 669 F.2d at 321. Third, the Court evaluates Olivares's claim that the dismissal with prejudice "granted the Defendants more relief than they sought." (Mot., Dkt. 50, at 8).

#### A. Clear Record of Delay and Aggravating Factors

The Court does not modify its previous conclusion that Olivares created a clear record of delay in this case, which it detailed at length in its previous Order. (Dkt. 47, at 1–3). The Court does not discount the magnitude of the adverse events that Olivares's counsel suffered in his personal life while this case was pending. (*See* Mot., Dkt. 50, at 5). But other events which Olivares cites as contributing to the rampant delays in this case—in particular, counsel's "computer crash," characterized as "bad luck"—were or could have been avoidable. (*Id.* at 4). Moreover, if at any point Olivares's counsel felt that any of these events, including those beyond his control, severely affected his ability to diligently represent his client, he could have—and, his code of conduct implies, should have—"associate[d] a lawyer who is competent in the matter." Tex. Disciplinary Rules Prof'l Conduct R. 1.01 cmt. 5.

In arguing that Olivares's counsel's "conduct does not amount to a clear record of delay," Olivares cites *Callip v. Harris Cty. Child Welfare Dep't*, 757 F.2d 1513, 1521 (5th Cir. 1985).[1] (Mot., Dkt. 50, at 5–6). In *Callip*, the Fifth Circuit noted that it had "found that the plaintiff's failure to comply with scheduling and other pretrial orders and rules did not establish a clear record of delay or contumacious conduct," but that "most of these cases involve[d] noncompliance with *two or three* orders or rules of the district court." 757 F.2d at 1521 (emphasis added). Confronting the "record of delay" by counsel before it, the Fifth Circuit concluded that because it "involve[d] more than noncompliance with two or three pretrial orders" and there were "examples of delay attributable at least to Callip's counsel at every stage of the proceedings," dismissal with prejudice was justified. *Id.* The Court finds that the record in this case resembles the one which the Fifth Circuit analyzed in *Callip* and concluded was a clear record of delay. *See* 757 F.2d at 1519–20.

But it is less clear that any aggravating factors were present. *See also id.* ("Our disapproval of the conduct of . . . counsel is not, however, a sufficient basis, standing alone, upon which to affirm the dismissal for want of prosecution."). Most importantly, Olivares herself did not contribute to the delay.[2] *See Rogers*, 669 F.2d at 322 ("[W]e have been less willing to affirm the harsh sanction of

---

[1] Olivares also cites *Flaska v. Little River Marine Const. Co*, 389 F.2d 885, 889 (5th Cir. 1968) for the proposition that counsel's "dereliction and failure to meet his responsibilities at every stage of this proceeding" is not sufficient grounds for dismissal with prejudice if counsel's client was not complicit. (Mot., Dkt. 50, at 5–6). Since that case, though, the Fifth Circuit has explicitly announced that the client's complicity is one of multiple factors that may, but need not, be present as an aggravating factor supporting dismissal with prejudice. *Rogers*, 669 F.2d at 322; *Boudwin*, 756 F.2d at 401. And, citing *Flaska*, the Fifth Circuit has referenced the "every stage" language as grounds for dismissal with prejudice. *Callip*, 757 F.2d at 1521.

[2] Defendants argue that Olivares herself "was involved in the delay," referring to the second aggravating factor. (Resp., Dkt. 51, at 8). *Boudwin*, 756 F.2d at 401. Specifically, they argue that because Olivares "claimed that she lives 50 miles from her lawyer's office, does not have access to e-mail or fax, [and] does not drive," she caused delays in transmitting documents. (Resp., Dkt. 51, at 3 (citing 5th Mot. Enlarg. Time, Dkt. 35, at 2)). The mere facts of the location of Olivares's home, her inability to access the internet or a fax machine, and her inability to drive do not support a conclusion that she actively or contumaciously contributed to any delay. To suggest otherwise implies that the effects of procedural rules should be felt more harshly by litigants with these and similar characteristics. To the extent that these characteristics made the typical attorney-client and litigation processes more difficult, counsel should have evaluated that at the outset of the relationship and planned for the resulting exigencies during the case's pendency.

5

dismissal with prejudice where the plaintiff was not actually culpable."). Defendants do not appear to have suffered any undue prejudice, especially enough to justify dismissal with prejudice, despite their conclusory assertions to the contrary. (*See* Resp., Dkt. 51, at 8; Reply, Dkt. 52, at 4). And again, despite Defendants' arguments otherwise, (*see* Resp., Dkt. 51, at 2–5, 8), Olivares's elucidation of the various dilatory or otherwise delay-causing events in this case supports the conclusion that they were primarily if not exclusively unintentional—certainly not so obviously intentional as to unequivocally support dismissal with prejudice.

**B. Lesser Sanctions**

Olivares argues that the Court erred by failing to consider lesser sanctions prior to ordering dismissal with prejudice. (Mot., Dkt. 50, at 7). Defendants respond that the Court "could have entered a more severe sanction by assessing an additional monetary sanction or costs against Plaintiff" in addition to the dismissal with prejudice. (Resp., Dkt. 51, at 6 n.1, 8).

In its order dismissing Olivares's claims, the Court did not explicitly consider lesser sanctions. (*See* Order, Dkt. 47). The Fifth Circuit has stated that this "consideration, and the court's findings that lesser sanctions would be inadequate, must be spread upon the record for 'such findings of fact are essential for our consideration of the inevitable argument that the dismissal was an abuse of its discretion.'" *Boudwin*, 756 F.2d at 401 (quoting *Hornbuckle v. Arco Oil & Gas Co.,* 732 F.2d 1233, 1237 (5th Cir. 1984)). In other words, the purpose of the on-the-record analysis is to allow appellate review of the district court's decision, as signaled by the phrase "abuse of its discretion." As long as that analysis is evident in the record prior to appeal, its omission from the Court's Order dismissing Olivares's claims does not automatically vitiate that Order's effect.

So, the Court analyzes the availability and inefficacy of lesser sanctions here. The Court twice previously warned Olivares that no more extensions of time would be granted, but she continued to seek extensions. (Order, Dkt. 47, at 3). Though these warnings could have more

6

explicitly advised Olivares of potential negative consequences should she continue to seek extensions, (*see* Text Order, June 3, 2019; Order, Dkt. 40, at 2), counsel can be presumed to have been aware of the consequences of disobeying the Court's orders, and Olivares's choice to do so indicates that warnings proved ineffective.

However, other lesser sanctions would suffice. Conditional dismissal would unduly punish Olivares herself, even though "a party is bound by the acts of his attorney." *Callip*, 757 F.2d at 1522. Considering the array of options the Fifth Circuit has identified, *see Rogers*, 669 F.2d at 321, the Court concludes that sanctions against Olivares's counsel are appropriate, rather than dismissal with prejudice. Given that Olivares herself did not contribute to the delay, assessing fines against her would be unwarranted.[3]

### C. Scope of Relief

Finally, Olivares argues that that dismissal of all her claims with prejudice grants Defendants more relief than they have requested. (Mot., Dkt. 50, at 7–8). She cites their Motion for Summary Judgment in which they ask for dismissal of her ERISA claims and for the Court to "decline to exercise supplemental jurisdiction over the remaining state law . . . claim," (Dkt. 37 at 4). (Mot., Dkt. 50, at 7–8). But in Defendants' answer, they explicitly "request that this Court dismiss Plaintiff's claims against them," not differentiating between her ERISA and state-law claims. (1st Am. Answer, Dkt. 26, at 9). So, dismissing all of Olivares's claims with prejudice is not outside the scope of relief Defendants have requested. Even if it were, though, the context of Defendants' Motion for Summary Judgment is incorrect. The Court did not decide to dismiss Olivares's claims in an order on that motion, but rather as an exercise of its discretion pursuant to its inherent authority. Therefore, this argument does not allow Olivares to prevail.

---

[3] The Court declines to pursue or recommend attorney disciplinary measures against Olivares's counsel, in part because it believes Olivares herself is better suited to decide whether that is the best course of action.

## IV.  CONCLUSION

For the reasons discussed above, **IT IS ORDERED** that Olivares's motion, (Dkt. 50), is **GRANTED IN PART AND DENIED IN PART.** The Court's July 18, 2019, Order, (Dkt 47), and its Final Judgment, (Dkt. 48), are **VACATED**. The Court will schedule a sanctions hearing and a scheduling conference in a separate order.

**SIGNED** on March 5, 2020.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE