IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BONNIE OLIVARES, | § | |
| Plaintiff, | § § § | |
| v. | § § | 1:18-CV-892-RP |
| LULING CARE CENTER NURSING OPERATIONS, LLC *d/b/a* LULING CARE CENTER and LULING CARE CENTER SAFETY PROGRAM BENEFIT PLAN, | § § § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is Defendants Luling Care Center Nursing Operations LLC *d/b/a* Luling Care Center ("LCC") and Luling Care Center Safety Program Benefit Plan's (the "Plan"; collectively, "Defendants") Motion for Summary Judgment, (Dkt. 37), and associated briefing (Resp., Dkt. 45; Reply, Dkt. 46). After considering the parties' arguments, the facts in the record, and the relevant law, the Court grants in part and denies in part Defendants' motion.

## I. BACKGROUND

This case involves Olivares's claims related to "serious personal injuries" she suffered while employed by LCC. (Am. Compl., Dkt. 24, at 1). Olivares worked in LCC's laundry facility. (*Id.* at 2–3). She alleges that while delivering laundry to a LCC resident, the resident attacked her. (*Id.* at 4). When she called for help from other LCC employees, she asked for medical assistance, which her supervisor initially denied. (*Id.*). She was asked to sign an incident report as a condition of being allowed to leave to go to the hospital, and did so. (*Id.*). As a result of the incident, Olivares states that she has been unable to return to work and is "totally and permanently disabled." (*Id.* at 5). Olivares further alleges that when she applied for medical reimbursement and back pay benefits from the Plan, she was terminated and her request was denied, citing her ostensible "malicious

1

behavior or horseplay." (*Id.* at 6). And she maintains that Defendants have stonewalled her records requests that would allow her to exhaust administrative remedies. (*Id.* at 8–10). She seeks declaratory judgments, past medical benefits and wages, statutory fines, and other monetary damages under federal and state law. (*Id.* at 13–14).

Defendants, meanwhile, assert a procedural argument in response: because the Plan required an appeal of denied benefits within 180 days, which Olivares did not do, and because ERISA requires Olivares to exhaust administrative remedies before filing suit, her ERISA claims are invalid. (Mot. Summ. J., Dkt. 37, at 4). As for her state-law claims, Defendants argue that if the ERISA claims are dismissed, the Court will lose subject-matter jurisdiction and should decline to exercise supplemental jurisdiction over them. (*Id.*).

On July 18, 2019, the Court dismissed all of Olivares's claims against Defendants for failure to prosecute. (Order, Dkt. 47). The final judgment it issued rendered the motion for summary judgment moot. (Dkt. 48 at 1). On March 5, 2020, though, the Court granted in part and denied in part Olivares's motion to amend that judgment, (Dkt. 50), vacating the previous order and final judgment and reopening both the motion for summary judgment and the case. (Order, Dkt. 52).

## II. LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion[ ] and identifying those portions of [the record] which it believes

2

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he moving party may [also] meet its burden by simply pointing to an absence of evidence to support the nonmoving party's case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995).

Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmoving party is required to identify specific evidence in the record and to articulate the precise way that evidence supports her claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 allows the court to "consider other materials in the record" in addition to what the parties cite as evidence. Fed R. Civ. P. 56(c)(3). But it does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmoving party's opposition to the motion for summary judgment. *Adams*, 465 F.3d at 164.

After the nonmoving party has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find in its favor, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 175 (5th Cir. 2000). When the nonmoving party does not respond, the Court treats the facts the moving party has raised as "undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2); *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). Still, the court must view the summary judgment evidence in the light most favorable to the nonmoving party. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

### III. ANALYSIS

#### A. Olivares's Response

As a preliminary matter, the Court considers Defendants' request that the Court not consider Olivares's response, which they argue was filed untimely and was unsigned.[1] (Reply Mot. Summ. J., Dkt. 46, at 2–3). The Court may extend time on Olivares's motion only if it finds, "as a substantive matter," that "there was indeed cause for the late filing, and that the failure to file on time was the result of excusable neglect." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 897 (1990) (quoting Fed. R. Civ. P. 6(b)(1)) (cleaned up).

On June 26, 2019, Olivares filed a request for an extension of time to file her response. (Dkt. 39). The Court granted her request in part, setting July 10, 2019, as the deadline. (Dkt. 40 at 2). The Court specified that it would "not grant Olivares any further extensions of time to respond to the motion." (*Id.*). Nevertheless, on July 11, 2019, Olivares requested an additional extension, (Dkt. 43), and filed her response the same day, (Notice of Electronic Filing, Dkt. 45).

Here, Olivares "made no request to extend the time to file [her] response before the [ultimate] deadline." *Kitchen v. BASF*, 952 F.3d 247, 254 (5th Cir. 2020). Her motion did not explicitly argue excusable neglect but can reasonably be interpreted to be doing so based on the circumstances it describes. *Cf. id.* ("[H]e did not file a motion for an extension arguing excusable neglect."). (*See also* Reply Mot. Am. J., Dkt. 50, at 1, 3 (arguing excusable neglect)). Still, it would be within the Court's discretion to strike her response: "a district court has discretion to refuse to accept a party's dilatory response to a motion for summary judgment, even if the court

---

[1] The Court declines to consider Olivares's response on the ground that it is untimely. But the Court notes that Defendants' argument concerning the response's lack of a signature is inapt. While Federal Rule of Civil Procedure 11(a) requires all "written motion[s]" to be signed, and states that "[t]he court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention," Rule 5(d)(3)(C) clarifies that "[a] filing made through a person's electronic-filing account and authorized by that person, together with that person's name on a signature block, constitutes the person's signature." *See also* 5A Charles A. Wright, et al., *Federal Practice and Procedure* § 1333 (4th ed. Aug. 2019 update). That is the case here. (*See* Resp., Dkt. 45, at 9; Notice of Electronic Filing, Dkt. 45).

4

acknowledges reading the response, and has discretion to deny extending the deadline when no excusable neglect is shown." *Kitchen*, 952 F.3d at 254 (citing *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 161 (5th Cir. 2006)); *see also Alston v. Mississippi Dep't of Transportation*, No. 19-60583, 2020 WL 747222, at *2 (5th Cir. Feb. 13, 2020) (quoting *Shepherd v. City of Shreveport*, 920 F.3d 278, 288 (5th Cir. 2019)) ("District courts must have the power to control their dockets by holding litigants to a schedule."). "Relevant factors to the excusable neglect inquiry include: 'the danger of prejudice to the [nonmoving party], the length of the delay and its potential impact on the judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Adams*, 465 F.3d at 161 n.8 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

Here, the Court has already found that Olivares (more specifically, her counsel) created a "clear record of delay." (Order, Dkt. 54, at 5). The Court also found that Defendants had not suffered any undue prejudice. (*Id.*). However, the delay was long and harmed the judicial proceeding. (*See id.* at 1). Taking these factors into account, the Court will refuse to accept Olivares's response. *See Kitchen*, 952 F.3d at 254. To the extent that Defendants' reply specifically addresses arguments in the response, it does not figure into the Court's subsequent analysis. (*See* Reply Mot. Summ. J., Dkt. 46, at 3–9).

**B. ERISA**

1. <u>Exhaustion of Administrative Remedies</u>

Under ERISA, potential plaintiffs seeking to sue benefit plans must first exhaust their administrative remedies. *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000). This requirement exists for claims for wrongly denied benefits as well as for breach of fiduciary duty. *Simmons v. Wilcox*, 911 F.2d 1077, 1081 (5th Cir. 1990). Defendants contend that Olivares failed to exhaust her administrative remedies, precluding her ability to bring ERISA-related

5

claims in this case. (Mot. Summ. J., Dkt. 37, at 4, 9–14). They argue that Olivares conceded that she did not exhaust her administrative remedies, as she understood them, prior to filing suit. (Mot. Summ. J., Dkt. 37 (citing Am. Compl., Dkt. 24, at 9)).

On August 25, 2016, Olivares's previous lawyer requested "a complete copy of [her] file" from Defendants, accompanied by Olivares's signed authorization. (Defs.' Ex. 8, Dkt. 37-1, at 59–60). On August 31, 2016, former Defendant Employment Risk Systems, Inc. ("ERS")[2] responded on Defendants' behalf that "LCC considers [the file] to be company property and does not provide those records upon request" and proceeded to restate the results of its initial investigation. (Defs.' Ex. 9, Dkt. 37-1, at 61). Defendants omit this salient fact from their motion. (*See* Mot. Summ. J., Dkt. 37, at 7 ("On August 31, ERS responded for LCC.")).

On September 12, 2016, Olivares's previous lawyer replied, stating that he no longer represented Olivares. (Defs.' Ex. 10, Dkt. 37-1, at 62). The next development occurred on November 14, 2016, when Olivares's current lawyer filed a more extensive records request. (Defs.' Ex. 11, Dkt. 37-1, at 63–65). On December 14, 2016, ERS responded on Defendants' behalf, providing benefits plan documents and the initial letter it sent to Olivares and answering certain of Olivares's questions, but reiterating that "[t]he claim file is company property and is not released upon request." (Defs.' Ex. 12, Dkt. 37-1, at 66–67). It also stated that it would release any "private health information in the file" if Olivares sent a HIPAA authorization. (*Id.* at 66). She did not. (*See* Mot. Summ. J., Dkt. 37, at 11).

As a result, in her first amended complaint, Olivares stated that she "has not exhausted the administrative remedies because the actions of LCC and ERS made it futile or impossible to do so" by denying her "meaningful access to the appeals process and the documents needed for an appeal." (Dkt. 24 at 9). She argues that Defendants' ostensible "failure to provide the requested records

---

[2] (*See* Order, Dkt. 42 (terminating ERS after Olivares dismissed her claims against it)).

amounts to a failure to provide the administrative record." (*Id.*). Defendants maintain that Olivares had sufficient access to the appeals process, that her decision not to file a HIPAA authorization vitiates her claims, and that the futility exception to ERISA's administrative exhaustion requirement does not apply. (Mot. Summ. J., Dkt. 37, at 9–17).

Four issues that readily emerge are easily resolved. First, the existence of the administrative remedy of appeal means that appealing, or attempting to engage in the appeal process, can constitute exhausting administrative remedies. *See generally Denton v. First Nat. Bank of Waco, Texas*, 765 F.2d 1295 (5th Cir. 1985). The fact that the Plan does not specifically penalize failure to complete an appeal does not change that analysis, despite Olivares's assertion to the contrary. (Am. Compl., Dkt. 27, at 9–10). Second, Olivares's lawyer's November 14, 2016, letter was not itself a completed appeal, as it merely expressed her intention to appeal. *See Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1018–19 (5th Cir. 2009). Third, Olivares requested and was provided with the plan documents themselves, so she cannot argue that she "lacked the requisite information to file a claim" on that basis alone. *McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 560 (5th Cir. 2004); *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1279 (5th Cir. 1990). Fourth, she has not shown "hostility or bias on the part of the administrative review committee," so she cannot allege futility as a reason to not exhaust administrative remedies. *McGowin*, 363 F.3d at 559–560.

But two key questions remain. Did Defendants' refusal to provide the documents Olivares requested in her lawyers' August 25, 2016, and November 14, 2016, letters deny Olivares meaningful access to appeal procedures? And did Olivares's failure to send a HIPAA authorization mean that she did not exhaust administrative procedures?

29 C.F.R. § 2560.503-1(h)(1) requires benefit plans to establish appeal procedures offering employees a "full and fair review" of both the original claim and the adverse benefit determination. Subsection (h)(2) specifies that this requirement is only satisfied if the plan's procedures "[p]rovide

that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." The regulation further specifies that "relevant" documents are those which were (1) "relied upon in making the benefit determination"; (2) "submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination"; (3) "[d]emonstrate[d] compliance with the administrative processes and safeguards required . . . in making the benefit determination"; or (4) "constitute[d] a statement of policy or guidance with respect to the plan concerning the denied . . . benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination." 29 C.F.R. § 2560.503-1(h)(2)(iii), (m)(8). So, when the Fifth Circuit speaks of the employee's "duty to seek the necessary information even if it has not been made available," it is referring to information about the benefit plan and appeal procedures themselves, not the underlying administrative record leading to an adverse benefit determination. *Bourgeois*, 215 F.3d at 480.

Defendants effectively argue that their offer of personal health information conditional on a HIPAA authorization was them "clearly advising a would-be claimant of a valid task it must perform so that a claim may be processed," in which case there would be "no interference with access" to the appeal procedure. *Mem'l Hermann Health Sys. v. Sw. LTC, Ltd. Employee Benefits Plan*, 683 F. App'x 274, 275 (5th Cir. 2017) (citing *McGowin*, 363 F.3d at 560). To the extent that is indeed their argument, it is misplaced. In *Mem'l Hermann Health Sys.*, the employer "repeatedly informed" the plaintiff, a hospital that had treated the employee, that "it needed an authorization from [the employee] before it could provide documents relating to [the employee] and before [the hospital] could invoke the administrative process." *Id.* at 274. The hospital did not provide the authorization and so the employer did not send it the documents. *Id.* The Fifth Circuit consequently held that the hospital did

8

not exhaust its administrative remedies and was not denied meaningful access to that process. *Id.* at 275.

In this case, by contrast, Defendants flatly denied access to the majority of the documents that Olivares's lawyers requested after Olivares authorized them to do so. (Defs.' Ex. 12, Dkt. 37-1, at 66 ("The claim file is company property and is not released upon request.")). Significantly, those documents appear to be those that 29 C.F.R. § 2560.503-1 indicates are relevant and must be provided. Defendants argue that Olivares "had the ability to ask for documents and had she provided the authorization form, she might have received all she needed, or at least the ability to identify what the additional documents were . . . and ask again." (Reply Mot. Summ. J., Dkt. 46, at 7). And Defendants further maintain that "whether [Olivares] was missing documents . . . is irrelevant to whether she could have appealed, as her appeal would have allowed her . . . access to all documents considered in the claim determination." (*Id.*). But, per 29 C.F.R. § 2560.503-1, this argument puts the cart before the horse. For her to have a full and fair review at all, she had to have access to the documents necessary to prepare an appeal, as the regulation recognizes. *See Lafleur v. Louisiana Health Serv. & Indem. Co.*, 563 F.3d 148, 156 (5th Cir. 2009).

As a result, there exists a genuine dispute of material fact as to whether Olivares did indeed exhaust the administrative remedies that Defendants made available to her. Viewing all facts in the light most favorable to Olivares, as required at the summary judgment phase, *Rosado*, 5 F.3d at 123, Defendants' assertion that a HIPAA authorization might have provided Olivares with the required documents does not conclusively settle this issue so as to make summary judgment appropriate. Olivares need only have exhausted the administrative remedies that were meaningfully available to her. To hold otherwise would allow Defendants to evade the requirements 29 C.F.R. § 2560.503-1 imposes on them. Defendants are not entitled to judgment as a matter of law on this issue.

2. Retaliation Claims

Defendants also argue that they are entitled to summary judgment on Olivares's claim of retaliation for making a claim for benefits under 29 U.S.C. § 1140, (*see* Am. Compl., Dkt. 27, at 11). (Mot. Summ. J., Dkt. 37, at 19–20). Plaintiffs pursuing these claims "must first establish a *prima facie* case," which "requires proof that the employer terminated the plaintiff 'in retaliation for exercising an ERISA right or to prevent attainment of benefits to which he would have become entitled under an employee benefit plan.'" *Parker v. Cooper Tire & Rubber Co.*, 546 F. App'x 522, 526 (5th Cir. 2014) (quoting *Custer v. Murphy Oil USA, Inc.,* 503 F.3d 415, 423 (5th Cir. 2007)). "An essential element of a claim for retaliation . . . is proof of the employer's 'specific discriminatory intent.'" *Id.* (quoting *Custer*, 503 F.3d at 423)). If Olivares can make this showing, the burden shifts to Defendants "to present a legitimate, nondiscriminatory reason for the alleged discriminatory conduct." *Id.* Then, if Defendants can "state[ ] a legitimate, nondiscriminatory reason for discharging [Olivares], the burden shifts back to [Olivares] to show that [Defendants'] articulated reason for the termination is a mere pretext for discrimination." *Id.*

Here, Defendants contend that Olivares has not specifically alleged that they terminated her with any specific discriminatory intent, and moreover, that no evidence of any such intent exists in the record. (Mot. Summ. J., Dkt. 37, at 16–17). Even viewing the summary judgment evidence in the light most favorable to Olivares, the Court agrees. *See Rosado*, 5 F.3d at 123. While the timing of her termination could potentially support the conclusory inference Olivares draws, the point of the burden-shifting analysis is to ensure correlation is not automatically taken to indicate causation. She has not pointed to any specific evidence supporting her claim. Defendants are consequently entitled to summary judgment on this issue.

## IV.  CONCLUSION

For the reasons discussed above, **IT IS ORDERED** that Defendants' motion for summary judgment, (Dkt. 37), is **GRANTED IN PART AND DENIED IN PART**. It is granted as to Olivares's retaliation claim under 29 U.S.C. § 1140. It is denied as to the remainder of Olivares's claims.

In light of this case's procedural posture, the Court may schedule a status conference in a separate order.

**SIGNED** on April 6, 2020.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE